UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MARCUS D. MAYS,

       Plaintiff,

v.                                                                  Case No. 2:15-cv-154
                                                                    HON.  GORDON J. QUIST
KEVIN HAMMILA, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Marcus D. Mays filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Noah Beesley, Jason Bessner, Sergei Casper, Kevin Hemmila, Nancy Hulkoff, Thomas LaPlante, Shawn Minerick, Charles Nagele, Jesse Niemi, Jessee Sohlden, Michael Waltanen, Rick Wertanen, and Chung Oh.  In his complaint, Plaintiff asserts (1) Eighth Amendment excessive force claims against Defendants Beesley, Bessner, Hemmila, Minerick, Nagele, Niemi, Sohlden, Waltanen, and Wertanen; (2); a First Amendment retaliation claim against Defendant LaPlante; and (3) Eighth Amendment deliberate indifference claims against Defendants Oh, Hulkoff, and Casper.[1]  Defendants Beesley, Bessner, Casper, Hemmila, Hulkoff, LaPlante, Minerick, Nagele Niemi, Sohlden, Waltanen, and Wertanen, ("the MDOC Defendants") filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56(a). (ECF No. 166). Defendant Oh filed a separate motion for summary judgment.  (ECF No. 165)  Plaintiff has responded.  This matter is ready for decision.

---

[1] The undersigned notes that Plaintiff confirmed at his deposition that these are the only claims that he is pursuing in this case.

The claims in this case arise from a series of events that occurred while Plaintiff was confined at the Baraga Correctional Facility (AMF).  Plaintiff alleges that on November 28, 2012, Defendant Hemmila poisoned his food. The food poisoning caused Plaintiff to vomit blood and suffer stomach cramping, but Plaintiff never received any medical treatment.  On the same day, Defendant Hemmila slammed Plaintiff's hand in the food slot and stated, "I really don't like that grievance you filed regarding my refusal to give you soap and toothpaste. . . . that's payback because of your pending law suit on coworkers Gill and Redinger."  Plaintiff subsequently filed a grievance against Defendant Hemmila. At Step I, the respondent reviewed the video tape of the alleged incident and determined that Defendant Hemmila never slammed Plaintiff's hand in the food tray slot. On January 8, 2013, the grievance coordinator, Defendant LaPlante, issued Plaintiff a Class II misconduct, alleging that Plaintiff filed a false grievance against Defendant Hemmila. Plaintiff did not attend the hearing on this misconduct and was subsequently found guilty.  Plaintiff now alleges that Defendant LaPlante issued the misconduct in retaliation for Plaintiff filing grievances and in order to cover-up the November 28, 2012 excessive force incident.

Plaintiff next alleges that on December 27, 2012, officer Jacobson refused to take Plaintiff's food tray. Because Plaintiff still had his food tray, Defendant Hemmila came to Plaintiff's cell to pick up the food tray and slammed Plaintiff's arm in the food slot for a second time. Defendant Hemmila told Plaintiff "that's what you get for writing that grievance on me." Plaintiff then filed grievance against Defendant Hemmila for slamming his arm in the food slot.

Plaintiff alleges that on August 15, 2013, Baraga staff moved him from 2 block to 7 block. Defendant Hemmila also moved to Plaintiff's new block. Plaintiff tried to send out legal mail on August 22, 2013, but Defendant Hemmila told Plaintiff that "if Plaintiff continued to send out legal mail he would beat Plaintiff's ass and send Plaintiff back to the hole . . . . I don't like

prisoners who file lawsuits on my coworkers." On August 23, 2013, Defendants Hemmila and Waltanen were standing outside of Plaintiff's cell. As Plaintiff walked outside of his cell, he went up to Defendant Hemmila and asked why he continued to harass Plaintiff about legal mail. Plaintiff states that Defendant Hemmila placed his hand on his taser gun and told Plaintiff that "if you continue to run your mouth I'm going to beat your fucking ass and send you back to the hole." Plaintiff alleges that Defendant Hemmila spit in Plaintiff's face. Plaintiff alleges that Defendant Hemmila then took a swing at Plaintiff, so Plaintiff struck Defendant Hemmila. Plaintiff was then tasered by Defendant Minerick.  Plaintiff states that the use of the taser was unnecessary because he had already stopped fighting. Plaintiff claims that Lieutenant Yankovich falsified a critical incident report by stating that Plaintiff came out his cell and started throwing punches at Defendant Hemmila. Plaintiff further alleges that he was then escorted to an "isolated hallway" where he was beaten up by Defendants Beesley, Bessner, Hemmila, Niemi, Nagele, Sohlden, Waltanen, and Wertanen.

Shortly thereafter, Plaintiff was taken to health care where he was examined by Defendants Oh, Hulkoff, and Casper.  Plaintiff claims that he suffered eye, lip, rib, kidney, and back injuries.  The medical records indicate that Defendants removed the taser probe from Plaintiff's back, checked Plaintiff's vital signs, and examined the cuts on Plaintiff's lip and eyelid. Plaintiff states that the medical records were falsified and that he received no medical treatment. Following this incident, Defendant LaPlante issued Plaintiff a Class I misconduct. In addition, Plaintiff was charged in stated court and subsequently pled guilty to assaulting Defendant Hemmila.

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close***,** 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958).  The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain."  *Rhodes*, 452 U.S. at 346.  Among unnecessary and wanton infliction of pain are those that are "totally without penological justification."  *Id.*

-4-

"To make out a claim under the Eighth Amendment, the prisoner must satisfy both an objective and a subjective component." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (citing *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993)). "The subjective component focuses on the state of mind of the prison officials." *Id.* In the excessive force context, "the relevant inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). When determining whether the subjective component is met, courts must consider the following factors: (1) the need for the application of force; (2) the relationship between such need and the force used; (3) the threat reasonably perceived by the prison official; and (4) any efforts undertaken to temper the severity of the response. *Id.* (citing *Hudson*, 503 U.S. at 7).

"The objective component requires the pain inflicted to be 'sufficiently serious.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "This component requires a 'contextual' investigation, one that is 'responsive to contemporary standards of decency.'" *Cordell v. McKinney*, 759 F.3d 573, 580-81 (6th Cir. 2014) (quoting *Hudson*, 503 U.S. at 8). "While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Id.* at 580-81 (citing *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Id.* at 581 (quoting *Hudson*, 503 U.S. at 9).

Plaintiff first asserts excessive force claims based on Defendant Hemmila poisoning Plaintiff's food and slamming his hand in a food slot on November 28, 2012 and December 27, 2012. Defendant Hemmila denies these allegations. (ECF No. 167-6, PageID.1700). Defendants state that Plaintiff "has no evidence, other than his own self-serving statements to

support those claims." (ECF No. 167, PageID.1657).  Although Defendants appear to be correct, Plaintiff made these allegations in his verified complaint. And this Court has held that Plaintiff's verified complaint is sufficient to create a question of fact. (See ECF No. 134, PageID.1093). Thus, the undersigned finds that a question of fact remains as to whether Defendant Hemmila poisoned Plaintiff's food and slammed his hand in a food slot on November 28, 2012 and December 27, 2012. Accordingly, in the opinion of the undersigned, Defendant Hemmila is not entitled to summary judgment on this claim.

Plaintiff next asserts excessive force claims stemming from the August 23, 2013 incident.  Defendants have submitted two videos to the Court that show a portion of the incident. The first video was from a camera overlooking the hallway. The second video was from a taser body camera.  The undersigned has reviewed both videos and finds that they contradict Plaintiff's version of events. The video shows that Plaintiff walked out of his cell and went directly up to Defendant Hemmila. Defendant Hemmila took a step back and Plaintiff continued to walk closer. Plaintiff, completely unprovoked, threw a punch at Defendant Hemmila. Defendant Hemmila ducked, but Plaintiff grabbed him and threw a series of closed-fists punches, hitting him in the face and rib area. Several corrections officers subsequently ran to help Defendant Hemmila. In an attempt to stop Plaintiff from fighting, Defendant Minerick deployed his taser.  Plaintiff then went to the ground and was restrained by other corrections officers. Plaintiff was then escorted down the hallway and out of the view of the camera.

Plaintiff's only claim against Defendant Minerick stems from the use of the taser during the incident.  Plaintiff argues that the use of the taser was not necessary because he had already stopped fighting.  However, Plaintiff's version of events is directly contradicted by the video of the incident. At the time Defendant Minerick deployed his taser, Plaintiff is still fighting

and not complying with the other corrections officers' verbal commands to stop. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).  After considering the need to apply force to stop the ongoing assault and the relationship of the need and amount of force used, the undersigned finds that no reasonable jury could find that Defendant Minerick acted with the culpable state of mind to meet the subjective component of an excessive force claim.  *See Williams*, 631 F.3d at 383.  Instead, Defendant Minerick's use of force was applied in a good-faith effort to maintain and restore discipline during Plaintiff's assault of Defendant Hemmila. Therefore, in the opinion of the undersigned, Defendant Minerick is entitled to summary judgment.

Plaintiff alleges that he was assaulted in an isolated hallway after the initial incident by Defendants Beesley, Niemi, Sohlden, Hemmila, Nagele, Waltanen, Bessner, and Wertanen. There is no video of this alleged event. All eight Defendants deny that they assaulted Plaintiff in an isolated hallway. In fact, Defendant Bessner states that he never even responded to the incident because he was assigned to the control center during the relevant time period. Despite Defendants' denials, they have not presented any objective evidence to contradict Plaintiff's version of events. Moreover, Plaintiff has made his allegations in his verified complaint. Plaintiff's verified complaint is sufficient to create a question of fact as to whether he was assaulted in an isolated hallway by Defendants Beesley, Niemi, Sohlden, Hemmila, Nagele, Waltanen, Bessner, and Wertanen.

Plaintiff next asserts retaliation claims against Defendant LaPlante stemming from a misconduct ticket issued on January 8, 2013, and a misconduct ticket issued on August 26, 2013.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy Cty Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With respect to the first misconduct, Plaintiff makes a conclusory assertion that Defendant LaPlante issued the misconduct in retaliation for Plaintiff filing grievances and in order to cover-up the November 28, 2012 excessive force incident. However, the record shows that Defendant LaPlante issued the misconduct only after an investigation by ARUS LeClaire, which included a review of the video of the alleged incident. Based on his investigation, ARUS LeClaire determined that Defendant Hemmila never slammed Plaintiff's arm in the door. Defendant LaPlante relied on ARUS LeClaire's findings and subsequently determined that Plaintiff filed the initial grievance as an attempt to "cause disciplinary action to be taken against [Defendant] Hemmila." (ECF No. 174-1, PageID.1782). Plaintiff does not allege any facts to establish that Defendant LaPlante issued the misconduct in retaliation. With respect to the second misconduct, Plaintiff cannot credibly argue that the August 26, 2013 misconduct was false. As discussed above, the video shows that Plaintiff assaulted Defendant Hemmila on August 23, 2013. Moreover, Plaintiff pled guilty to a felony in state court stemming from the same incident. Plaintiff has failed to show that the exercise of the protected right was a substantial or motivating factor in Defendant

-8-

LaPlante's alleged retaliatory conduct. Therefore, in the opinion of the undersigned, Defendant LaPlante is entitled to summary judgment on Plaintiff's retaliation claims.

Plaintiff finally alleges that Defendants Oh, Casper, and Hulkoff were deliberately indifferent to his medical needs in violation of his Eighth Amendment rights. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). A prisoner's Eighth Amendment rights are violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; see also *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland County*, 466 F.3d 416, 434 (6th Cir. 2006). Moreover, "the question whether an x-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment." *Estelle v. Gamble*, 429 U.S. 97, 107 (1976).

When addressing this claim against Defendant Oh in a previous Report and Recommendation, the undersigned wrote:

> Assuming Plaintiff's injuries amounted to a sufficiently serious harm, Plaintiff has failed to show that Defendant Oh acted with the requisite culpable state of mind to satisfy the subjective prong of the deliberately indifferent test. Based on Plaintiff's medical records, it is evident that Plaintiff received adequate medical care from Defendant Oh. Defendant Oh saw Plaintiff shortly after the incident on August 23, 2013. It is undisputed that Defendant Oh removed the taser probe from Plaintiff's back and checked Plaintiff's vital signs. According to Defendant Oh's Affidavit and Plaintiff's medical records, Defendant Oh evaluated the cuts on Plaintiff's face and instructed the nurse to clean them. The cuts did not require stiches and were fully healed by September 16, 2013. Moreover, the medical records show that Plaintiff never indicated that he was suffering any back, rib, or kidney pain until several days later. Although Plaintiff claims that Defendant Oh falsified the August 23 Critical Incident Report, Defendant Oh's report is consistent with his other medical records. The report noted both the taser probe and the cuts on his face. Because Plaintiff did not complain about any other injuries until several days later, Defendant Oh could not have

-10-

included the injuries on the Critical Incident Report that was created on August 23.

Even assuming that Defendant Oh refused to treat all of Plaintiff's injuries on August 23, 2014, Plaintiff cannot argue that he suffered a complete denial of medical care. As soon as health care personnel became aware of his pain through a medical kite, a medical appointment was scheduled. Plaintiff was subsequently examined, and a nurse—after consulting Defendant Oh—created a treatment plan. The treatment plan consisted of limited physical activity, hot/cold compresses, Tylenol to reduce the pain, and using a pillow as a splint for certain activities. Plaintiff apparently disagreed with this treatment plan and requested x-rays. However, Defendant Oh and another nurse determined that x-rays were unnecessary because it would not change the recommended treatment plan. The two trained medical professionals also did not want to subject Plaintiff to unnecessary excess radiation from the x-ray. In the opinion of the undersigned, Defendant Oh made a reasonable medical decision to not order x-rays and this decision does not amount to an Eighth Amendment violation. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976).

Finally, Plaintiff's claim that he still suffers from chronic headaches and rib and back pain is not supported by his medical records. Over the past several years, Plaintiff has had numerous medical appointments for various medical issues; however, he has not complained of any rib, back, or kidney injuries that were a result of the August 23, 2013 altercation. Therefore, in the opinion of the undersigned, Defendant Oh has met his burden of showing that he is entitled to judgement as a matter of law.

(ECF No. 125, PageID.972-974). The Court subsequently rejected the Report & Recommendation

in part. When addressing the August 23 incident, the Court stated:

Defendant has failed to come forward with sufficiently "objective" evidence that blatantly contradicts Plaintiff's account of events. Such evidence must "speak for itself." *Oliver v. Greene*, 613 F. App'x 455, 457 (6th Cir. 2015) (noting that "deposition testimony, affidavits, and prison records" do not qualify as evidence that speaks for itself). Defendant's affidavit and Plaintiff's medical records amount to contradictory sides of the story.

Taking the claims in the verified complaint as true, the Court concludes that Plaintiff has satisfied these objective and subjective

-11-

components of the deliberate indifference claim. Minor cuts, scrapes, and bruises do not rise to the level of an objectively serious medical condition. *See, e.g., Lockett v. Surardini*, 526 F.3d 866, 876 (6th Cir. 2008). But cuts on the face that cause "profuse bleeding" could reasonably be found to amount to a serious medical condition. The verified complaint also sets forth sufficient facts for a jury to conclude that Plaintiff satisfies the subjective component: if Defendant was close enough to remove the Taser probe, he must have been close enough to subjectively perceive and then ignore Plaintiff's other injures.

(ECF No. 134, PageID.1093).

Defendant Oh now argues that Plaintiff's injuries were not sufficiently serious. Defendant Oh points to Plaintiff's deposition testimony in which Plaintiff stated that he was able to stop the bleeding by using toilet paper less than ten minutes after being denied medical treatment. Plaintiff also confirmed that the cuts never got infected.  However, as mentioned above, the Court has already found that "cuts on the face that cause 'profuse bleeding' could reasonably be found to amount to a serious medical condition."  Despite Plaintiff's testimony, the undersigned finds that there is still a question of fact as to whether the cuts on Plaintiff's face amount to a serious medical condition.

Defendants Casper and Hulkoff argue that they are entitled to qualified immunity. Defendants Casper and Hulkoff further state that Plaintiff is simply disputing the quality of care that he received. But Plaintiff states—in his verified complaint—that he was completely denied medical care following the August 23, 2013 incident. Plaintiff states that Defendants did not treat the cuts on his face that were "profusely bleeding."  Defendants' sworn statements, Plaintiff's medical records, and the critical incident report contradict Plaintiff's version of events. Nonetheless, the undersigned finds that whether Plaintiff received any medical treatment is a question of fact. Furthermore, because a question of fact remains as to whether Plaintiff received any treatment, Defendants Casper and Hulkoff are not entitled to qualified immunity. *See Bletz v.*

-12-

*Gribble*, 641 F.3d 743, 749 (6th Cir. 2011) ("[I]f genuine issues of material fact exist as to whether the officer committed acts that would violate a clearly established right, then summary judgment is improper."). Therefore, consistent with the Court's reasoning in its previous opinion, the undersigned recommends that the Court deny Defendants Oh, Casper, and Hulkoff summary judgment.

Accordingly, it is recommended that the MDOC Defendants' motion for summary judgment (ECF No. 166) be granted as to Defendants Minerick and LaPlante and denied as to Defendants Beesley, Bessner, Hemmila, Nagele, Niemi, Sohlden, Waltanen, and Wertanen. Thus, in the opinion of the undersigned, Defendants Minerick and LaPlante should be dismissed from this case.

It is further recommended that Defendant Oh's motion for summary judgment (ECF No. 165) be denied.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: February 12, 2019

    /s/ Timothy P. Greeley
    TIMOTHY P. GREELEY
    UNITED STATES MAGISTRATE JUDGE